# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | : CHAPTER 7 |
| | : |
| KEYSTONE SURPLUS METALS, INC., D/B/A | : |
| KEYSTONE SPECIALTY METALS, INC. | : |
|        DEBTOR | : BANKRUPTCY NO. 08-16450 |
| | : |
| ROBERT H. HOLBER, TRUSTEE | : |
|        PLAINTIFF | : |
|     VS. | : |
| ALBERT KAUFFMAN | : |
|        DEFENDANT | : ADVS. NO. 11-0278 |

# OPINION

BY: STEPHEN RASLAVICH, CHIEF UNITED STATES BANKRUPTCY JUDGE.

## Introduction

The Trustee filed suit against the Debtor's principal (Kauffman) to avoid and recover certain prepetition transfers. The Trustee now seeks to amend the complaint to add more transfers. Kauffman objects on various grounds, primarily untimeliness. A hearing on the matter was held June 23, 2011. The Court then took the matter under advisement. For the reasons which follow, the Motion will be granted.[1]

## The Record

The Debtor commenced this case under Chapter 11 on October 3, 2008. The case was converted to Chapter 7 on March 30, 2010. The Trustee was appointed on April 2, 2010. On March 23, 2011, the Trustee filed suit against Kauffman to avoid and

---

[1] As this matter pertains to the avoidance of preferential transfers and fraudulent conveyances, it is within this Court's core jurisdiction. *See* 28 U.S.C. § 157(b)(2)(F) and (H).

recover both preferential and fraudulent transfers. The statute of limitations as to avoidance claims was April 2, 2011. See 11 U.S.C. § 546(a)(1) (setting the limitation at the *later* of 2 years after the order for relief or 1 year after the appointment of a trustee). On May 26, 2011 the Trustee sought leave to amend the complaint to include transfers which he says are newly-discovered. On June 9, 2011 Kauffman filed an Objection to the request.

**Applicable Law**

Amendment of pleadings is governed by Fed. R.Bankr.P. 7015, which makes Fed.R.Civ.P. 15 applicable to adversary proceedings. The rule provides, in pertinent part:

> (a) Amendments Before Trial.
>
> (1) Amending as a Matter of Course. A party may amend its pleading once as a matter of course within:
>
> (A) 21 days after serving it, or
>
> (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
>
> (2) Other Amendments. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Fed.R.Civ.P. 15(a) (emphasis added). The Supreme Court has admonished lower courts that "this mandate is to be heeded." Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). It furthers the policy of trying cases on their merits. Id. It

also avoids the possibility of the opposing party suffering prejudice or surprise. 6 Charles Alan Wright, et al, Federal Practice and Procedure, Civil § 1474.

The precise delineation of when leave to amend a complain should be granted or denied is impossible; therefore, the determination is left to the sound discretion of the trial judge. NAACP v. Harrison, 907 F.2d 1408, 1417 (3d Cir.1990). The Court is to consider the position of both parties and the effect that the request will have on them. Federal Practice, supra at § 1487 (emphasis added). For this reason, the court may deny a request to amend when the moving party has demonstrated undue delay, bad faith or dilatory motive, or where the amendment would prejudice the opposing party. See Foman, supra, id.; Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir.2002)  Equally, an amendment will be denied where it is futile. Id.

**Parties' Positions**

The Trustee contends that he did not come into possession of information leading to the discovery of the new transfers he wants to add until two days before the expiration of the statute of limitations. He explains that on March 31, 2011, a creditor Steel Sales, M.A., Inc., filed a motion for allowance of an administrative claim. See Trustee's Motion, ¶ 3. Steel Sales' Motion alleges irregularities regarding the sale of scrap metal from the Debtor to certain customers. Specifically, it is alleged the Debtor sold steel to Thalheimer Bros., Inc., which did not pay the Debtor for the steel, but instead paid the Debtor's principal, Kauffman. See id., ¶ 4. It is from this source that the Trustee argues he learned of the transfers which he wants to add to the Complaint

via the proposed amendment.  He argues that because such claims arose out of the same conduct which supports the claims in the original Complaint, they relate back for timeliness purposes under Rule 15(c)(1)(B) of the Federal Rule of Civil Procedure.  Id. ¶¶ 8-9.

Kauffman disputes the premise that the transfers in question are newly-discovered.  He alleges that the Trustee interrogated Kauffman at the § 341 creditors meeting, but asked no questions regarding the sale of scrap metal to Steel Sales.  If the Trustee only learned of the questionable sales after the expiration of the statute, Kauffman argues, then it was due to a failure of diligence on the Trustee's part.  Objection, ¶¶ 6-7.  Kauffman also disputes the claim that the new transfers arise out of the same conduct as the transfers already pleaded.  Id. ¶ 8.  Finally, he argues that the applicable statute of limitations has expired.  Id. ¶ 9.

**Relation Back**

With regard to the Trustee's claim that the proposed amendment would relate back in time to the filing of the original complaint, Rule 15 provides:

> (c) Relation Back of Amendments.
>
> (1) **When an Amendment Relates Back**. An amendment to a pleading relates back to the date of the original pleading when:
> ...
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out–or attempted to be set out--in the original pleading;

F.R.C.P. 15(c)(1)(B).  The Third Circuit has held that an amended complaint relates

4

back when the "amendments ... restate the original claim with greater particularity or amplify the factual circumstances surrounding the pertinent conduct, transaction or occurrence in the preceding pleading.... In essence, application of Rule 15(c) involves a search for a common core of operative facts in the two pleadings." General Motors Corp. v. Schneider Logistics, Inc., 2008 WL 2785861, at *5 (E.D.Pa. July 17, 2008) quoting Bensel v. Allied Pilots Ass'n., 387 F.3d 298, 310 (3d Cir.2004).  When determining whether a common core of operative facts exists, the court looks at "whether the opposing party has had fair notice of the general fact situation and legal theory upon which the amending party proceeds." Id. (citing Michelsen v. Penney, 135 F.2d 409, 416–17 (2d Cir.1943)).

In comparing the new claims against Kauffman to the old, the Court does not agree that the Defendant should have expected them to be raised sooner.  While Count II of the original complaint and new Count II of the amended complaint are both based on fraud, the factual predicates are not the same.  In the current fraud count it is alleged that Kauffman used the Debtor's money to pay down a personal loan.  The amendment adds the entirely new fraud count alleging that Kauffman sold the Debtor's inventory to customers but pocketed the proceeds for himself.  While both instances of fraud involve self-dealing, each alleges distinctly different ways and involves different third parties.  It is understandable that these new claims would come as a surprise to Kauffman.  Without a nexus to the existing fraud claim, the proposed count would not relate back for purposes of timeliness.

**Equitable Tolling**

That is not to say, however, that the record does not otherwise demonstrate that Kauffman's timeliness argument fails. The equities of the case support tolling of the applicable deadline. Id. In that regard, the Third Circuit has explained that it is

> the fundamental rule of equity that a party should not be permitted to profit from its own wrongdoing. This basic principle underlies the equitable tolling doctrine itself. See Miklavic v. USAir Inc., 21 F.3d 551, 557 (3d Cir.1994). To allow a defendant to benefit from the statute of limitations defense after intentionally misleading the plaintiff with regard to the cause of action, thereby causing the plaintiff's tardiness, would be "manifestly unjust." Cf. Miklavic, 21 F.3d at 557. See also LaVallee Northside Civic Ass'n v. Coastal Zone Management, 866 F.2d 616, 625 (3d Cir.1989) (stating that equitable tolling is based on the equitable principle that, having unfairly lulled the plaintiff into inaction, the defendant may not profit by such wrongful conduct through invocation of the statute of limitations defense).
>
> Against the back-drop of this principle, we are lead [sic] to conclude that where a defendant actively misleads the plaintiff regarding the reason for the plaintiff's dismissal, the statute of limitations will not begin to run, that is, will be tolled, until the facts which would support the plaintiff's cause of action are apparent, or should be apparent to a person with a reasonably prudent regard for his or her rights. This is the rule set forth by the Court of Appeals for the Fifth Circuit in Reeb v. Economic Opportunity Atlanta, Inc., 516 F.2d 924 (5th Cir.1975). It has been recognized and applied by a number of our sister circuits, see Vaught v. R.R. Donnelley & Sons Co., 745 F.2d 407, 410-12 (7th Cir.1984) (applying Reeb and referring to it the "seminal case" in the area of equitable tolling); Wilkerson v. Siegfried Ins. Agency, Inc., 683 F.2d 344, 345-46 (10th Cir.1982) (applying Reeb ); Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1531-32 (11th Cir.1992) (same), and we adopt it here.

Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1388-89 (3d Cir. 1994) The plaintiff has the burden of proof on the question of whether equitable tolling is warranted. Courtney v. LaSalle Univ., 124 F.3d 499, 505 (3d Cir. 1997)  For present purposes this means that the Trustee must demonstrate that he belatedly learned of the new transfers due to concealment on Kauffman's part.

**Statement of Financial Affairs**

Upon assuming control of the estate, the Trustee would as a matter of course rely on information in the Debtor's Statement of Financial Affairs (SoFA). See In re Nedovich, 2006 WL 2990047, at *2 (Bankr.D.Conn. Oct. 18, 2006) (recognizing that trustee may rely on information in Schedules and Statement of Financial Affairs); see also In re Flemings, 433 B.R 230, 241 (Bankr.E.D.Tenn.) ("As a policy matter, the trustee and the creditors should be able to rely on accurate schedules and a complete statement of financial affairs."); see also Ronald W. Goss, Meetings of Creditors Under Section 341 of the Bankruptcy Code: A Primer, 17 J. Contemp. L. 1, 6 -7 (1991) ("In Chapter 7 cases, the trustee relies almost exclusively on the Schedules of Assets and Liabilities and Statements of Financial Affairs in deciding how to administer the estate. Honest answers enable the trustee and creditors to fully and fairly evaluate the debtor's financial condition.)   Item #10 of the SoFA is entitled Other Transfers.  It directs the Debtor to "list all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within two years immediately preceding the commencement

of this case." See SoFA, #10 (emphasis added). The Debtor listed <u>no</u> <u>such</u> <u>transfers</u> and checked off the box next to Item #10 NONE. As of the date of his appointment, then, nothing in the Debtor's disclosures put the Trustee on notice of the transfers which are the subject of the proposed amendment.

**Section 341 Meeting**

On May 14, 2010, the Trustee conducted the meeting of creditors. Present was Mr. Kauffman and his counsel, the Debtor's counsel, as well as counsel for Steel Sales. Hr'g Tr. 21. While questions regarding the sale of scrap metal came up, the Trustee recalls nothing specific in that regard. Id. 21-23. Importantly, Kauffman offered no evidence demonstrating that any discussion occurred which would have alerted the Trustee to improper sales of the Debtor's inventory. Upon concluding that meeting, the Trustee had yet to learn of the transfers which he now seeks leave to pursue.

**Accountant's Analysis**
**of Insider Transfers**

On June 2, 2010, the Court approved the retention of the Trustee's accountant. From the Debtor's books and records, the accountant undertook an investigation of avoidable transfers including payments to insiders. Id. 11. Trustee's Exhibit T-3 consists a list of transfers from the Debtor to Kauffman within the year prior bankruptcy. The result of that investigation was the basis for the current preference and fraudulent transfer claims against Kauffman. As noted, on March 23, 2011, the Trustee filed suit against Kauffman to avoid and recover certain preferential and fraudulent transfers.

**Steel Sales' Request for
an Administrative Claim**

On March 31, 2011, Steel Sales' filed the aforementioned request for allowance of an administrative claim.  Hr'g Tr. 12.  The Trustee testified that this request suggested improprieties with regard to sales of scrap steel.  Id. 13.  He thereupon requested documentation from Steel Sales in this regard.  Id.  That documentation was received on Friday, April 1, 2011, three days before the statute of limitations would expire.  Id. 14 (explaining that because the deadline fell on a Saturday, it carried over to Monday).  Because the documents were voluminous, the Trustee sent them on to the accountant for analysis.  Id.  The accountant concluded that additional avoidable transfers—heretofore unknown to the Trustee—had been made by Kauffman for his own benefit.  Id. 15.  Trustee's Exhibit T-2 is a compilation of payments from Thalheimer Bros., a customer of the Debtor, to the Debtor, to Kauffman individually, as well as to others.  The payments to Kauffman are upwards of $250,000.  Trustee's Exhibit T-1 consists of invoices from Thalheimer, copies of five cancelled checks from Thalheimer payable to Kauffman personally, and payment instructions from Kauffman written on the Debtor's letterhead which are consistent with the amount of each cancelled check.  Importantly, it was the Trustee's unrebutted testimony that <u>none</u> of these transactions were listed on the Debtor's books and records.  Id. 18.  Neither were they listed on the SoFA.  Id. 19.  This information prompted the Trustee to request leave to amend the complaint to add these newly discovered transfers.  Id.

**Kauffman's Case**

Kauffman challenges this evidence on both procedural and substantive grounds. He contends that the Trustee's proofs consist of nothing more than hearsay. Aside from what the Trustee offers, says Kauffman, other evidence put him on inquiry notice of the payments from Thalheimer to Kauffman from the outset of his trusteeship. To this Kauffman adds that the Trustee failed to investigate these payments when questioning Kauffman at the creditors meeting.

**Hearsay**

As the Trustee attempted to testify about how he learned of the transfers to which the amendment relates, Kauffman interposed hearsay objections. Hr'g Tr. 8, 13, 15-16, 23. The first example is the Trustee's explanation that he learned of the alleged self-dealing from an ex-employee or from a secured lender. Id. 8, 23. On the surface this would be classic hearsay, were it offered for the truth of what was said. From a hearsay standpoint, the Court allowed the statements to the limited extent that it reflected the Trustee's state of mind. In other words, the effect of the third party's statement on the Trustee is probative and admissible for present purposes. It caused the Trustee to promptly investigate the allegation that Kauffman had transferred the Debtor's property to customers for personal gain. Indeed, and strictly speaking, because the statements were offered for their operative effect on the Trustee—and not for their truth—they may just as easily be deemed not to be hearsay at all.[2]

---

[2] "Hearsay does not encompass all extrajudicial statements but only those offered for the purpose of proving the truth of matters asserted in the statement." Barry Russell, Bankr.
(continued...)

Kauffman's next hearsay objection was interposed as to what was alleged in the Steel Sales' administrative claim request. Just as with the Trustee's recalling what he learned from an ex-employee, his paraphrasing of Steel Sales' allegations is probative of his state of mind. Those allegations, the Trustee testified, caused him to investigate the possibility of recovering from Kauffman other theretofore unknown transfers. That testimony was not offered to prove that Kauffman had made such transfers. What it did prove was that upon reading those allegations, the Trustee acted with dispatch to find out if they were true. For that reason, the Trustee's testimony regarding the Steel Sales motion once again was allowed to a limited extent.

**Other Evidence**

On cross-examination, Kauffman sought an admission that the Trustee failed to investigate probative evidence already in the record on the date he was appointed trustee. Kauffman refers to a documents subpoena issued by the Court before the case was converted. The subpoena directed Thalheimer Bros to produce documents to Steel Sales. Hr'g T. 20  The subpoena was dated January 27, 2010 and was returnable February 16, 2010. Implicit in Kauffman's line of questioning here is the premise that had the Trustee reviewed the main case docket and seen the subpoena, then he would have learned of these other transfers to Kauffman as of April 2010. Kauffman, however, could offer no proof of when the documents responsive to the subpoena

---

²(...continued)
Evid. Manual § 801:5 (2010 ed.) "Effect on listener. In another group falling outside the category of hearsay, a statement made by one person which becomes known to another is offered as a circumstance under which the latter acted and as bearing upon his conduct." Id.

11

were ever produced. Id. 21. Moreover, the Court observes, the subpoena pertained not to the Debtor but to two non-debtors (Thalheimer Bros and Steel Sales, Inc.) Indeed, Kauffman all but conceded that this questioning was of dubious probative value. Id.

Kauffman fares no better in arguing that the Trustee could have learned of the transfers at the meeting of creditors (May 14, 2010). The Trustee testified that in attendance were Debtor's counsel, Kauffman, his counsel and counsel for Steel Sales, Inc., along with, of course, the Trustee. Id. 21. He further testified that he questioned Kauffman regarding sales of scrap metal; however, he did not do so at the prompting of Steel Sales. Id. 21-22. That, however, is as specific as the Trustee's testimony gets in that regard. What Kauffman said exactly at that meeting was not placed in the record. Kauffman did not provide a transcript of the meeting nor did he testify himself. Like the above-mentioned subpoena, the Trustee's conduct at the creditors meeting is unclear and is thus not determinative.

In sum, the Court finds Kauffman's argument to be a classic "red herring." The most probative piece of evidence in this record as to the Trustee's knowledge of any irregular sales of steel is the Statement of Financial Affairs. Item #10 of the SoFA required Kauffman to disclose transfers of property which were out of the ordinary course of the Debtor's business. If the allegations the Trustee seeks to add are proven, Kauffman clearly failed to do so. Proof of such off-the-books sales of steel would render the Debtor's response to Item #10 of the SoFA perjurious and

actionable. That the Trustee would rely on the information in the SoFA is perfectly reasonable. The SoFA is attested to as true and correct under penalty of perjury. Accordingly, and contrary to Kauffman's contention, there is no record evidence that would have put the Trustee on inquiry notice of the proposed new claims before the statute of limitations had run. The evidence that does exist, on the other hand, demonstrates that Kauffman may very well have actively misled the Trustee into believing no such transfers were made. The Court, therefore, will apply the doctrine of equitable tolling to allow the requested amendment to the Complaint. See In re J & D Sciences, Inc., 335 B.R. 791, 797-798 (Bankr.M.D.Fla. 2006) (applying equitable tolling on behalf of trustee where debtor's president affirmatively concealed patent and prepetition assignment of patent to insider by not disclosing same on Statement of Financial Affairs); see also In re Geneva Steel LLC, 389 B.R. 231, 241 (Bankr.D.Utah 2008) (holding that trustee not on inquiry notice of avoidable transfers which debtor failed to disclose on Statement of Financial Affairs).

**Summary**

The Trustee has met his burden of proof. Based on Kauffman's apparent active concealment of certain prepetition transfers, the Court finds the application of equitable tolling to be warranted. The Trustee is therefore granted leave to add the transfers referenced in the proposed amendment to the Complaint.

An appropriate Order follows.

By the Court:

_Stephen Raslavich_
Stephen Raslavich
Chief U.S. Bankruptcy Judge

Dated: July 14, 2011